**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-cv-21354-ALTMAN/Sanchez**

**LINDA LALUSIS**,

     *Plaintiff,*

*v.*

**NCL (BAHAMAS) LTD.**,

     *Defendant.*

_____/

**ORDER ON MOTION TO STRIKE AFFIRMATIVE DEFENSE**

In this cruise-ship trip-and-fall case, the Plaintiff, Linda Lalusis, alleges that she "tripped and fell" in the "piano bar" area of the cruise ship *Breakaway*—a vessel "owned, leased, chartered, operated, maintained, managed, and/or controlled" by the Defendant, NCL (Bahamas) Ltd. ("NCL"). *See* Complaint [ECF No. 1] ¶¶ 10, 12. Lalusis claims that, "unbeknownst to her, there was a threshold in [the piano bar] area that was camouflaged, poorly lit, unmarked, uneven, and unreasonably raised, which could not reasonably be seen by her or a reasonable passenger. No warning signs were posted at the time of the incident," or, "[i]n the alternative, if any warnings were present, they were insufficient for [her] to have seen them." *Id.* ¶ 12. Lalusis says that she "sustained severe injuries that include, but are not limited to, a meniscus tear, a baker cyst, nerve damage, a concussion, aggravation of preexisting back and lumbar pain and injuries, contusions, fear, and other injuries to her head, face, mouth, hands, legs, knees, and feet," *id.* ¶ 14, and she now asserts six negligence counts against NCL, *see id.* at 7–17. "This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333." *Id.* ¶ 2.

On May 13, 2024, NCL filed its Answer and Affirmative Defenses (the "Affirmative Defenses") [ECF No. 5]. On June 3, 2024, Lalusis submitted a Motion to Strike the Defendant's Fourth and Thirteenth Affirmative Defenses (the "Motion to Strike") [ECF No. 13]. The parties

appeared at a status conference on June 5, 2024, *see* Paperless Minute Entry [ECF No. 14], during which we resolved the Motion to Strike the Fourth Affirmative Defense, *see* Order Following Status Conference [ECF No. 16] at 1 ("For the reasons stated on the record at the hearing on June 5, 2024, we hereby **ORDER and ADJUDGE** [that] [t]he Motion to Strike the Defendant's Fourth Affirmative Defense . . . is **GRANTED**."). That leaves just the Motion to Strike the Thirteenth Affirmative Defense, which is now ripe for resolution.[1]

## THE LAW

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Under Rule 12(f), a "motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *U.S. Commodity Futures Trading Comm'n v. Mintco, LLC*, 2016 WL 3944101, at *2 (S.D. Fla. May 17, 2016) (Bloom, J.). "Courts have broad discretion when considering a motion to strike, [although] striking defenses from a pleading remains a drastic remedy to be resorted to only when required for the purposes of justice and only when the stricken material has no possible relation to the controversy." *FAST SRL v. Direct Connection Travel, LLC*, 330 F.R.D. 315, 317 (S.D. Fla. 2018) (Martinez, J.) (cleaned up).

So, when do we strike an affirmative defense? District courts are split on whether the higher pleading standards the Supreme Court laid out in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), govern affirmative defenses. Some judges believe that those heightened pleading standards do apply. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 650 (S.D. Fla. 2015) (King, J.) ("Affirmative defenses must meet the pleading standards in *Iqbal* and *Twombly*."); *see also Castillo v. Roche Labs. Inc.*, 2010 WL 3027726, at *2 (S.D. Fla. Aug. 2, 2010) (Seitz, J.)

---

[1] *See* Defendant's Response in Opposition to Motion to Strike Thirteenth Affirmative Defense (the "Response") [ECF No. 19]. The Plaintiff did not file a reply.

("Defendant's affirmative defenses must meet the pleading standard set out in *Twombly* and *Iqbal*."). Others have held that they don't. These latter courts conclude that affirmative defenses need only "provide[ ] the opposing party with notice of an additional issue (not directly related to liability) that may be raised at trial so that the opposing party can litigate the new issue." *Brito v. Palm Springs Mile Assocs., Ltd.*, 2021 WL 2634863, at *1 (S.D. Fla. Feb. 3, 2021) (Scola, J.); *see also, e.g.*, *Sparta Ins. Co. v. Colareta*, 2013 WL 5588140, at *3 (S.D. Fla. Oct. 10, 2013) (Rosenbaum, J.) ("[S]o long as [d]efendants' affirmative defenses give [p]laintiffs notice of the claims [d]efendants will litigate, and vice versa, the defenses will be appropriately pled under Rules 8(b) and (c)."); *Tsavaris v. Pfizer, Inc.*, 310 F.R.D. 678, 682 (S.D. Fla. 2015) (Moore, C.J.) ("Although Rule 8 does not obligate a defendant to set forth detailed factual allegations, a defendant must give the plaintiff 'fair notice' of the nature of a defense and the grounds on which it rests."). And "the Eleventh Circuit has not yet resolved the split in opinion." *Northrop*, 2017 WL 5632041, at *2; *see also Tuggle v. Mamaroneck Cap., LLC*, 2019 WL 3782818, at *1 (M.D. Ga. Aug. 12, 2019) ("District courts in the Eleventh Circuit differ on whether *Twombly* and *Iqbal* apply to affirmative defenses, and the Eleventh Circuit has not resolved the split at this time."). As we've done in the past, we side with those judges who've held that an affirmative defense needn't satisfy the strictures of *Twombly* and *Iqbal*.

For one thing, Rule 8(b) expressly applies to "defenses," and Rule 8(c) explicitly governs "affirmative defenses." This is significant because these subsections appear separately from Rule 8(a), which deals with "claims for relief." We therefore don't agree that, when considering affirmative defenses, we should look to cases interpreting Rule 8(a). Instead, we should be guided by Rule 8(b), which addresses defenses generally, and Rule 8(c), which governs affirmative defenses specifically.

For another, both *Twombly* and *Iqbal* explicitly and repeatedly referred to Rule 8(a)'s "entitled to relief" language—fourteen times in *Twombly* and twelve in *Iqbal*—as support for the Supreme Court's view that a complaint must assert a *plausible* claim to relief. If the claim entitles you to relief,

the Supreme Court explained, then it must be plausible. But that "entitled to relief" requirement was notably omitted from the text of Rules 8(b) and (c). This omission must mean something. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) (describing the canon of *expressio unius* to mean that the "expression of one thing implies the exclusion of others"); NORMAN SINGER & SHAMBIE SINGER, 2A SUTHERLAND STATUTORY CONSTRUCTION § 47:23 (7th ed. updated Nov. 2021) ("*Expressio unius* instructs that, where a statute designates a form of conduct, the manner of its performance and operation, and the persons and things to which it refers, courts should infer that all omissions were intentional exclusions."). And the obvious implication is that *Twombly* and *Iqbal*'s plausibility standard just doesn't apply to affirmative defenses, which (as Rule 8(c) makes clear) need only "affirmatively state any avoidance or affirmative defense." FED. R. CIV. P. 8(c).

In our view, then, Rule 8 "does not obligate a defendant to set forth detailed factual allegations"; instead, "a defendant must give the plaintiff 'fair notice' of the nature of the defense and the grounds upon which it rests." *Adams v. Jumpstart Wireless Corp.*, 294 F.R.D 668, 671 (S.D. Fla. 2013) (Cohn, J.). In other words, "[a]n affirmative defense must be stricken when the defense comprises no more than bare-bones, conclusory allegations." *Ibid.* And, of course, "it is proper to strike a defense if it is insufficient as a matter of law." *Romero v. S. Waste Sys., LLC*, 619 F. Supp. 2d 1356, 1358 (S.D. Fla. 2009) (Ryskamp, J.). "A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law." *Ibid.* (quoting *Morrison v. Exec. Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005) (Ryskamp, J.)).

One more thing: In ruling on a motion to strike, "it is not appropriate for the [c]ourt to consider the merits of any affirmative defense because the [c]ourt accepts all well-pled facts as true and only evaluates the legal sufficiency of an affirmative defense." *Wyndham Vacation Ownership, Inc. v. Montgomery Law Firm, LLC*, 2020 WL 2128498, at *4 n.2 (M.D. Fla. May 5, 2020) (Honeywell, J.) (cleaned up); *see also Kearney v. Valley Nat'l Bank*, 2022 WL 19754, at *3 (M.D. Fla. Jan. 3, 2022) (Mizelle,

J.) ("[M]otions to strike are appropriate where an affirmative defense is legally insufficient on its face; a [c]ourt will not analyze whether a defense should fail on the merits in the motion-to-strike context." (cleaned up)).

So, here's our framework: *First*, we ask whether the "affirmative defense" is just a denial masquerading as an affirmative defense. *Second*, if it is an eligible affirmative defense, we determine whether it gives the Plaintiff fair notice of the defense and the grounds upon which it rests. If the answer to both questions is *yes*, then the affirmative defense survives.

ANALYSIS

NCL asserts the following as its Thirteenth Affirmative Defense:

> Plaintiff's damages, if any, are limited by the application of the limitation of liability contained in the Athens Convention Relating to the Carriage of Passengers and their Luggage by Sea ("Athens Convention"), applicable as agreed to by Plaintiff in the contract for passage. Section 6(d) of the contract for passage (aka the Guest Ticket Contract, attached as Exhibit "A"), states in pertinent part:

> ON ALL OTHER INTERNATIONAL CRUISES WHICH NEITHER EMBARK, DISEMBARK NOR CALL AT ANY U.S. PORT OR EUROPEAN MEMBER STATE, CARRIER SHALL BE ENTITLED TO ANY AND ALL LIABILITY LIMITATIONS AND IMMUNITIES FOR DEATH AND/OR PERSONAL INJURY AS PROVIDED IN THE ATHENS CONVENTION RELATING TO THE CARRIAGE OF PASSENGERS AND THEIR LUGGAGE BY SEA, 1974 AND THE PROTOCOL OF 2002 TO THAT CONVENTION (TOGETHER, THE "ATHENS CONVENTION") ON THE LIABILITY OF CARRIERS TO PASSENGERS IN THE EVENT OF ACCIDENTS. THE ATHENS CONVENTION LIMITS THE CARRIER'S LIABILITY FOR DEATH OF OR PERSONAL INJURY TO A GUEST TO NO MORE THAN 400,000 SPECIAL DRAWING RIGHTS ("SDR") PER GUEST (APPROXIMATELY U.S. $570,000, WHICH FLUCTUATES DEPENDING ON THE DAILY EXCHANGE RATE AS PUBLISHED IN THE WALL STREET JOURNAL).

Affirmative Defenses at 8–9.

Lalusis first moves to strike the Thirteenth Affirmative Defense on the ground that the Defendant "fails to admit the essential facts of the complaint" and "pleads no facts whatsoever in support this affirmative defense." Motion to Strike at 2. We disagree. For one thing, it's not true that NCL "fails to admit the essential facts" of the Complaint, since NCL plainly "admit[s] . . . that [the]

5

Plaintiff was a fare paying passenger aboard the subject vessel on May 20, 2023" and that "NCL operated the subject vessel on the date of the alleged incident." Affirmative Defenses at 2. It's also not true that NCL pleads *no facts* in support of the Thirteenth Affirmative Defense. Not only does NCL allege that Lalusis "agreed to . . . the limitation of liability contained in the Athens Convention" when she entered into her "contract for passage," *see id.* at 8–9, but NCL also attaches Lalusis's Guest Ticket Contract as an exhibit to its Affirmative Defenses, *see* [ECF No. 5-1].

For another, courts in our District have routinely rejected near-identical motions to strike "affirmative defenses," which plaintiffs appear to include as a matter of course with no supporting arguments whatsoever. *See, e.g., Melaih v. MSC Cruises, S.A.*, 2021 WL 3731272, at *7 (S.D. Fla. July 27, 2021) (Valle, Mag. J.), *report and recommendation adopted*, 2021 WL 3726210 (S.D. Fla. Aug. 23, 2021) (Smith, J.) (rejecting similar motion to strike as "summarily argue[d]" and noting that "arguments raised 'in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived'" (quoting *NLRB v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998))); *Jackson v. Carnival Corp.*, 2023 WL 2631460, at *3 (S.D. Fla. Mar. 24, 2023) (Goodman, Mag. J.) ("In this case [and] other cases, [p]laintiff's counsel has challenged affirmative defenses because they say the defendant did not admit the essential facts of the [c]omplaint. Indeed, the instant motion is hardly tailored to the specifics of this case; instead, as detailed below, many of the arguments appear to be lifted (or copied-and-pasted) from other prior motions . . . . [I]n each of those other cases, the [c]ourt . . . has rejected this identical argument."). We too decline to strike the Thirteenth Affirmative Defense on the ground that NCL "fails to admit the essential facts of the complaint" or because it allegedly "pleads no facts whatsoever in support this affirmative defense." Motion to Strike at 2.

Next, Lalusis moves to strike the Thirteenth Affirmative Defense on the ground that "the [Athens] Convention does not apply because there is no indication that the parties' relationship is international in nature." Motion to Strike at 3 (quoting *Gilroy v. Seabourn Cruise Line, Ltd.*, 2012 WL

1202343, at *2–3 (W.D. Wash. Apr. 10, 2012)). Because "the relationship between Plaintiff and NCL is not the kind of transnational legal relationship governed by the Convention," Lalusis contends that the "affirmative defense is inapplicable [and] should be stricken," *id.* at 4 (cleaned up).

In 46 U.S.C. § 30527—formerly 46 U.S.C. § 30509 and, before that, 46 U.S.C. § 183c[2]— Congress provided that "[t]he owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting-- (A) the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents; or (B) the right of a claimant for personal injury or death to a trial by court of competent jurisdiction." But where a "voyage . . . [does] not touch a United States port," the "terms of § 183c(a) plainly do not apply[.]" *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 835 (9th Cir. 2002); *see also Barham v. Royal Caribbean Cruises, Ltd.*, 2022 WL 17987302, at *18 (S.D. Fla. Oct. 4, 2022) (Goodman, Mag. J.) (finding that § 30527 did "not apply" because the "*Ovation of the Seas* did not transport the passengers on this cruise between ports in the United States or between a United States port and a foreign port").

Article 2 of the Athens Convention, by contrast, applies to any international carriage if: "(a) the ship is flying the flag of or is registered in a State Party to this Convention, or (b) the contract of carriage has been made in a State Party to this Convention, or (c) the place of departure or destination, according to the contract of carriage, is in a State Party to this Convention." *Id.* at 837 n.4. Because

---

[2] *See Ehart v. Lahaina Divers, Inc.*, 92 F.4th 844, 856 n.3 (9th Cir. 2024) (Collins, J., dissenting):

> [I]n December 2022, Congress redesignated § 30509 as § 30527. *See* Pub. L. No. 117-263, § 11503(a)(3), 136 Stat. 2395, 4130 (Dec. 23, 2022). Prior to the enactment of title 46 as positive law in 2006, the predecessor provision to § 30509 was contained in § 4283B of the Revised Statutes and was classified to § 183c of the unenacted version of title 46. The underlying prohibition on liability waivers was first enacted as § 4283B in 1936. *See* Ch. 521, § 2, 49 Stat. 1479, 1480 (June 5, 1936).

the United States is not a signatory to the Athens Convention, it "carries no force of law on its own." *Wajnstat v. Oceania Cruises, Inc.*, 2011 WL 13099034, at *3 (S.D. Fla. July 12, 2011) (Cooke, J.). "[A] contract provision that incorporates the Athens Convention to limit carrier liability for personal injury," however, "may be enforceable as a term of a valid contract." *Ibid.*; *see also Bond v. Cruiseport Curacao, C.V.*, 2018 WL 6413193, at *3 (W.D. Wash. Dec. 4, 2018) (explaining that, because the United States has not ratified the Athens Convention, "its limitation on liability applies only where it is validly incorporated into a passenger ticket contract").

Where a ship "never embarked from, nor disembarked in, a U.S. port, nor did its itinerary ever include a U.S. port[,] . . . . the limitation of liability provision may be enforceable as a contract term[.]" *Wajnstat*, 2011 WL 13099034, at *3; *see also Berman v. Royal Cruise Line, Ltd.*, 1995 WL 18251554, at *1 (Cal. Sup. Apr. 24, 1995) ("Title 46 U.S.C. app. 183(c), which prohibits a carrier from inserting a clause in a passage contract which limits its monetary liability, does not apply to a cruise which does not touch any U.S. port, even though the passage contract may have been purchased in the United States."); *cf. Henson v. Seabourn Cruise Line Ltd. Inc.*, 410 F. Supp. 2d 1246, 1248 (S.D. Fla. 2005) (Moreno, J.) ("The [d]efendants [ ] argue that the Athens Convention should apply because it is a term of the ticket contract, relying on *Berman v. Royal Cruise Line* . . . . However, *Berman* involved a vessel that never entered a United States port and thus 46 app. U.S.C § 183c did not apply.").

Our Plaintiff contends that the Thirteenth Affirmative Defense should be stricken because (in her view) "the relationship between Plaintiff and NCL is not the kind of transnational legal relationship governed by the Convention." Motion to Strike at 4 (cleaned up). But the only argument the Plaintiff provides in support of this claim is that "[a]ll of the[ ] facts from *Gilroy*"—a case from the Western District of Washington—"are equally applicable in the instant matter[.]" *Id.* at 3. In *Gilroy*, the court held that the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards—an entirely different Convention than the Athens Convention—"[did] not apply

because there [was] no indication that the parties' relationship [was] international in nature." 2012 WL 1202343, at *3. That's irrelevant to our case.

With respect to the Athens Convention, the proper inquiry (as we've hinted) is whether the limitation of liability in the Plaintiff's ticket is sufficient as a matter of law or whether it's barred by 46 U.S.C. § 30527. NCL avers (and Lalusis doesn't deny) that the "Plaintiff's alleged incident occurred during her voyage aboard the *Norwegian Breakaway* which began on May 16, 2023, in Civitavecchia, Italy, and ended on May 26, 2023, when it returned to Civitavecchia, Italy. During the 10-day voyage, the vessel visited other cities in Italy, Greece, and Malta, but it never called on a port in the United States." Response at 2. Given that the Plaintiff's cruise never touched a U.S. port, the terms of § 30527 "do not apply," *Wallis*, 306 F.3d at 835, so the limitation-of-liability provision in the Plaintiff's Ticket Contract "*may* be enforceable as a contract term," *Wajnstat*, 2011 WL 13099034, at *3 (emphasis added); *see also Najmyar v. Carnival Corp.*, 2017 WL 7796327, at *2 (S.D. Fla. Aug. 28, 2017) (Ungaro, J.) (allowing the defendant to amend its affirmative defense of express waiver of liability to bring it into "conformity" with "48 U.S.C. section 30509," since "the pleadings do not state the origin or destination of the cruise").

NCL spills much ink (in its Response) arguing that the limitation of liability in Lalusis's Ticket Contract is enforceable since it "meaningfully inform[s] [Lalusis] of [the] liability limitation," "passes the reasonable communicative test," and "specifically states the monetary limitation[.]" Response at 6. We needn't delve into the merits of this argument here because "it is not appropriate for the court to consider the merits of any affirmative defense [as] the court accepts all well-pled facts as true and only evaluates the legal sufficiency of an affirmative defense." *Wyndham*, 2020 WL 2128498, at *4 n.2 (cleaned up). At this stage, in short, it's enough that the Thirteenth Affirmative Defense is sufficient as a matter of law. We therefore decline to strike the Thirteenth Affirmative Defense.

CONCLUSION

The Motion to Strike the Thirteenth Affirmative Defense is **DENIED.**

**DONE AND ORDERED** in the Southern District of Florida on June 26, 2024.

_____

**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:       counsel of record